UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | | |
|---|---|---|
| In re: ELENA DROZNIK, DEBTOR | ) | Chapter 13 |
| | ) | Case No: 15-22167-rdd |
| NATIONSTAR MORTGAGE LLC, CREDITOR /MOVANT | ) | |
| v | ) | OBJECTION |
| ELENA DROZNIK, DEBTOR/ RESPONDENT | ) | |

**DEBTOR ELENA DROZNIK'S OBJECTION AND MEMORANDUM OF LAW IN OPPOSITION OF THE MOTION BY CREDITOR, NATIONSTAR MORTGAGE LLC, TO DISMISS CASE PURSUANT 11 U.S.C. § 1307(C)(5)**

TO: HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

NOW HERE COMES Elena Droznik, Chapter 13 Debtor, by and through her attorney of record, Linda M. Tirelli of Garvey Tirelli & Cushner, Ltd., hereby respectfully OBJECTS to Motion to Dismiss Case filed by creditor, Nationstar Mortgage, LLC ("Secured Creditor") and hereby presents the attached Memorandum of Law in support of Debtor's Objection.

Respectfully submitted,

**Dated:** June 14, 2016
White Plains, New York

/s/Linda M. Tirelli
Linda M. Tirelli, Esq.
Garvey Tirelli & Cushner Ltd.
50 Main Street, Suite 390
White Plains, New York 10606
Tel: (914) 946-2200

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION**

In re:
Elena Droznik,
Debtor

Chapter 13
Case No. 15-22167-rdd

**MEMORANDUM OF LAW IN OPPOSITION OF THE MOTION
BY CREDITOR, NATIONSTAR MORTGAGE LLC,
TO DISMISS CASE PURSUANT 11 U.S.C. § 1307(c)(5)**

GARVEY, TIRELLI & CUSHNER, LTD
Attorneys for the Debtors(s)
Westchester Financial Center
50 Main Street, Suite 390
White Plains, NY 10606
(914)946-2200

# TABLE OF AUTHORITIES

## STATUTES

11 U.S.C. § 1322(b)(2) .......... passim

11 U.S.C. § 1325(a)(5) .......... 4, 5, 8

11 U.S.C. § 1328(f)(1) .......... 3

11 U.S.C. § 506(a) .......... 7, 8, 9

11 U.S.C. § 524(a)(2) .......... 4

Section 1322(b) .......... 7

## CASES

*AmeriCredit Fin. Servs. V. Tompkins*, 604 F.3d 753 (2d. Cir. 2010) .......... 3

*Caminetti v. United States*, 242 U.S. 470 (1917) .......... 6

*Capital One Auto Finance v. Osborn*, 515 F.3d 817 (8th Cir. 2008.) .......... 3

*H.S.B.C. Bank U.S.A., N.A. v. Zair*, 2016 U.S. Dist. LEXIS 49032 (E.D.N.Y. Apr. 12, 2016, No. 15-cv-4958 (A.D.S) .......... 3

*In re Bateman*, 515 F.3d 272 (4th Cir. 2008) .......... 3

*In re Beulah Church of God in Christ Jesus, Inc.*, 316 B.R. 41 (Bankr. S.D.N.Y. 2004) .......... 6

*In re Blendheim*, 803 F.3d 477 (9th Cir. 2015) .......... 3, 4, 5, 6

*In re Boukatch*, 533 B.R. 292 (B.A.P. 9th Cir. 2015) .......... 8, 9

*In re Cain*, 513 B.R. 316 (B.A.P. 6th Cir. 2014) .......... 4

*In re Davis*, 716 F.3d 331 (4th Cir. 2013) .......... 3

*In re Dolinak*, 497 B.R. 15 (Bankr. D.N.H. 2013) .......... 4

*In re Fisette*, 455 B.R. 177 (B.A.P. 8th Cir. 2011) .......... 4, 6

*In re Hill*, 440 B.R. 176 (Bankr. S.D. Cal. 2010) .......... 4

*In re Miller*, 462 B.R. 421 (Bankr. E.D.N.Y. 2011) .......... 7

*In re Moore*, 441 B.R. 732 (Bankr. N.D.N.Y. 2010) ........................................ 5

*In re Scantling*, 754 F.3d 1323 (11th Cir. 2014) ........................................ 7, 8

*In re Sherwood*, 2016 Bankr. LEXIS 263 (U.S. Bankr. S.D.N.Y. Jan. 28, 2016, No. 15-10637 (J.L.G.) ........................................ 5

*In re Wimmer*, 512 B.R. 498 (Bankr. S.D.N.Y. 2014) ........................................ 5

*In re Zimmer*, 313 F.3d 1220 (9th Cir. 2002) ........................................ 9

*Johnson v. Home State Bank*, 501 U.S. 78 (1991) ........................................ 5, 6

*United States v. Ron Pair Enterprises*, 489 U.S. 235 (1989) ........................................ 6

**STATEMENT OF THE FACTS AND PROCEDURAL HISTORY**

Chapter 13 Debtor, Elena Droznik, (hereinafter "Mrs. Droznik", "Debtor" or "Droznik") lost her home to a fire in the early 2000's. At the time of the fire, Mrs. Droznik maintained a hazzard insurance policy with Metlife on her home ("homeowners insurance"). After the fire, the homeowner's insurance check dated October 9, 2006 was mailed to Mrs. Droznik by Metlife in the amount of $229,834.26. Said check was made payable to 4 parties namely, Elena Drosnik, Ilya Droznik, First Boston Fin Corp (first mortgage holder) and Citibank (the second mortgage holder).

After receiving the check, the Debtor's husband, Mr. Droznik, contacted Citibank asking what to with the check and was instructed to indorse the check and mail it to Citi and that the two mortgage holders would handle it from there. Mr. and Mrs. Droznik did as they were instructed and mailed the indorsed check to Citibank.

Months later, Citibank sent Mrs. Droznik a check for approximately $50,000 which is all accounted for. The money was used to level the rubble on the property and smooth over the slab of concrete to make the property safe. The property remains as a vacant lot today. The Debtor and her spouse have no information as to why or how Citi was able to cash the check without a signature of First Boston or if First Boston did actually indorse the check.

Nationstar, the perceived mortgage servicer to First Boston, filed a foreclosure action, which was dismissed, and then restarted again using the original index number. Mrs. Droznik filed for Chapter 7 bankruptcy on April 3, 2014. On October 8, 2014, Mrs. Droznik was granted a full discharge of her debts, including those owed to Nationstar.

Because Mrs. Droznik wants to keep the vacant lot, hoping to one day rebuild, she filed a Chapter 13 bankruptcy case on February 4, 2015. On March 17, 2015, Nationstar filed a Proof of

Claim asserting total debt of $462,433.12 and arrears of $198,121.09[1]. Mrs. Droznik filed a Chapter 13 Plan ( ECF Doc. No. 13) which does not rely on nor anticipate any need for a discharge of debts. The Debtor through counsel further filed a pending Motion to Reclassify Claim cramming down Nationstar's mortgage lien to the value of the property ( the "Cramdown") (see ECF Doc No 23). Mrs. Droznik's valuation of the property is based on an appraisal dated January 14, 2015, close to the time the bankruptcy case was filed, in the amount of $85,000. The Chapter 13 Plan is sufficient to pay enough money to satisfy the secured lien 100%.

In response to Mrs. Droznik's appraisal, Nationstar filed an objection which takes issue only with the amount of the appraised value. In its objecting papers, Nationstar avers the value of the property to be $126,000.00. The parties engaged in settlement negotiations and a series of adjournments until on or about April 26, 2016, at which time Nationstar filed a Motion to Deny Confirmation of the Plan and Dismiss the Case. This memorandum is submitted in opposition to Nationstar's Motion to Deny Confirmation and Dismiss the Case.

## ARGUMENT

### I. NATIONSTAR'S ARGUMENT IS MISGUIDED IN THAT DISCHARGE INELIGIBILITY DOES NOT STATUTORILY BAR THE INSTANT DEBTOR FROM ACHIEVING THE CRAM DOWN OF AN ALLOWED SECURED CLAIM TO THE VALUE OF THE VACANT LOT BECAUSE THE BANKRUPTCY CODE ONLY PREVENTS THE "CHAPTER 20" DEBTOR FROM RECEIVING A DISCHARGE AND DOES NOT EFFECT THE DEBTOR'S ABILITY TO MODIFY THE RIGHTS OF THE LIENHOLDER.

The Court should deny Nationstar's ("the Creditor") Motion to Deny Confirmation of the Mrs. Droznik's Plan and to Dismiss the Case because Mrs. Droznik is *not* required to be eligible for discharge in order to (1) receive confirmation of her proposed Chapter 13 plan or (2) modify the right's of the Creditor. In 2005, Congress enacted the Bankruptcy Abuse Prevention and

[1] The Debtor denies the validity of the amount claimed in the subject proof of claim.

Consumer Protection Act ("BAPCPA") including 11 U.S.C. § 1328(f)(1) which bars debtors from receiving a discharge at the conclusion of their Chapter 13 reorganization if they received a Chapter 7 discharge within four years of filing for Chapter 13 relief. *H.S.B.C. Bank U.S.A. N.A. v. Blendheim (In re Blendheim),* 803 F.3d 477, 480 (9th Cir. 2015). Debtors who have sought sequential relief under Chapters 7 and 13 are subject to § 1328(f) and are termed "Chapter 20" debtors. *Id.* at 488. Notwithstanding the bar on discharges imposed by the BAPCPA, courts have held that "a debtor may still take advantage of the protections offered by Chapter 13 short of a discharge." *Branigan v. Davis (In re Davis),* 716 F.3d 331, 336 (4th Cir. 2013) (citing *Branigan v. Bateman (In re Bateman)*, 515 F.3d 272, 283 (4th Cir. 2008)). "It is the ability to reorganize one's financial life and pay off debts, not the ability to receive a discharge, that is the debtor's 'holy grail.'" *Branigan v. Bateman (In re Bateman)*, 515 F.3d 272, 283 (4th Cir. 2008).

**A. Plan Confirmation**

A Chapter 13 debtor formulating a proposed plan of reorganization must include certain mandatory provisions set forth in §§ 1322(a) and 1325 of the Bankruptcy Code. *In re Blendheim,* at 485-86. A debtor's Chapter 13 plan "may only be confirmed (1) when the secured creditor accepts the plan; (2) when the debtor surrenders the secured property; or (3) in a… cramdown, when the debtor, over the creditor's objection, retains the secured property, 'yet pay[s] only the present value of the collateral to the creditor.'" *H.S.B.C. Bank U.S.A., N.A. v. Zair*, 2016 U.S. Dist. LEXIS 49032 (E.D.N.Y. Apr. 12, 2016, No. 15-cv-4958 (A.D.S) (quoting *AmeriCredit Fin. Servs. V. Tompkins*, 604 F.3d 753, 756 (2d. Cir. 2010)) (quoting *Capital One Auto Finance v. Osborn*, 515 F.3d 817, 820 (8th Cir. 2008.))

The court in *In re Cain* held that Section 1328(f)(1) "only prevents a Chapter 20 debtor from receiving a discharge [and] does not limit a chapter 20 debtor's rights [such as a cramdown]

under § 1322(b)." *In re Cain*, 513 B.R. 316, 321 (B.A.P. 6th Cir. 2014) (quoting *In re Dolinak*, 497 B.R. 15, 22-23 (Bankr. D.N.H. 2013)). Section 1322(b) allows a debtor's plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2).

Furthermore, the court in *In re Blendheim* held that there is "no reason to make the Bankruptcy Code's *in rem* modification provisions contingent upon a debtor's eligibility for a discharge, when discharges do not affect *in rem* rights." *In re Blendheim*, 803 F.3d at 494 (citing *Fisette v. Keller (In re Fisette)*, 455 B.R. 177, 186-87 (B.A.P. 8th Cir. 2011)). As defined under the Bankruptcy Code, a "discharge" operates as an injunction against a creditor's ability to proceed against a debtor personally. See 11 U.S.C. § 524(a)(2). "'Since the… debt was already discharged… in the Chapter 7 case, a second discharge for the Debtors in [a] Chapter 13 case would be redundant.'" *Id*. at 494 (quoting *In re Hill*, 440 B.R. 176, 182 (Bankr. S.D. Cal. 2010)).

Here, Mrs. Droznik's ineligibility for discharge does not bar her from achieving the result she seeks through her proposed plan which includes the cram down of an allowed secured claim to the value of the vacant lot. Like the Creditor in *Blendheim*, Nationstar's theory in this case that 11 U.S.C. § 1325(a)(5) requires discharge, consent, full payment of the debt, or the surrender of property for a plan to be confirmed, is fatally flawed. First, Mrs. Droznik is not seeking a discharge in her proposed Chapter 13 plan but a reorganization of her debts, therefore, requiring her to be eligible for discharge would be redundant and unnecessary and would impede her ability to take advantage of the other protections offered by Chapter 13. Similar to *Zair*, the court in *In re Sherwood* held that Section 1325(a)(5) provides that a Chapter 13 plan, with respect to an allowed secured claim, may be confirmed if one of the following conditions is provided for by the plan and satisfied: (1) the creditor has accepted the plan, (2) the plan provides for the property securing the

claim to be surrendered to the creditor, or (3) the plan provide for "cram down" of the claim. *In re Sherwood*, 2016 Bankr. LEXIS 263 (U.S. Bankr. S.D.N.Y. Jan. 28, 2016, No. 15-10637 (J.L.G.) (citing 11 U.S.C. § 1325(a)(5)).

Section 1322(b)(2) allows Mrs. Droznik to modify, or cram down, the Creditor's secured claim because the real property is not her primary residence. 11 U.S.C. § 1322(b)(2). Nothing in the Bankruptcy Code provides that a Chapter 13 debtor's benefits or remedies, including the right to modify liens, is conditioned on discharge eligibility. *In re Blendheim*, 803 F.3d at 496. This is confirmed by the court's language in *In re Wimmer* which states "there is no restriction on the debtor's ability to 'modify the rights' of holders whose claims are not secured by a principal residence." *In re Wimmer*, 512 B.R. 498, 504 (Bankr. S.D.N.Y. 2014) (citing *In re Moore*, 441 B.R. 732, 741 (Bankr. N.D.N.Y. 2010)). Like the debtor in *Wimmer*, Mrs. Droznik's ability to modify the rights of the Creditor should not be restricted. Despite the fact that the Creditor's claim in this case is secured, the property is not Mrs. Droznik's primary residence, and therefore, modification comports with § 1322(b)(2). Therefore, the Creditor incorrectly states that Mrs. Droznik's plan, in order to be confirmed, is required to include the payment of the underlying debt (i.e., payment of the full amount owed to the creditor irrespective of the value of the collateral) to the holder of an allowed secured or partially secured claim absent a discharge, property surrender, or the Creditor's consent.

The Court in *Johnson v. Home State Bank* held that a bankruptcy discharge extinguishes an action against the debtor *in personam* while leaving unimpaired a creditor's right to proceed *in rem* against the debtor's property. *Johnson v. Home State Bank*, 501 U.S. 78, 87 (1991). Congress did not intend to foreclose the benefit of a Chapter 13 reorganization to a debtor who has previously filed for Chapter 7 relief. *Id*. Therefore, there is no reason to make the Bankruptcy Code's *in rem*

modification provisions contingent upon Mrs. Droznik's eligibility for a discharge because "nothing in § 1328(f)(1), the provision barring a Chapter 20 debtor's discharge, limits the debtor's rights under § 1322(b)(2). *Fisette v. Keller (In re Fisette)*, 455 B.R. 177, 186-87 (B.A.P. 8th Cir. 2011) (explaining that the strip off of a lien "is not equivalent of receiving a discharge" because "a discharge releases a debtor's *in personam* liability, but it does not affect the lien.")

As stated by the court in *In re Beulah* regarding all issues of statutory interpretation, "one must begin with the words of the statute, and, if those words are unambiguous, also end there, unless the unambiguous meaning leads to a result that is either absurd of demonstrably at odds with the drafters' intention." *In re Beulah Church of God in Christ Jesus, Inc.*, 316 B.R. 41, 45 (Bankr. S.D.N.Y. 2004) (citations omitted). Where "the statute's language is plain, 'the sole function of the court is to enforce it according to its terms.'" *United States v. Ron Pair Enterprises*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). "We take Congress at its word when it said in § 1328(f) that Chapter 20 debtors are ineligible for a *discharge*, and only a discharge." *In re Blendheim*, 803 F.3d at 495. "Had Congress wished to prevent Chapter 7 debtors from having a second bite at the bankruptcy apple, then it could have prohibited Chapter 7 debtors from filing for Chapter 13 bankruptcy entirely." *Id.*

Here, Mrs. Droznik is not seeking a discharge, but to modify the rights of the Creditor with a secured claim, which is allowed under 11 U.S.C. § 1322(b)(2). The language of the statute is plain and unambiguous. Following the reasoning of the court in *Blendheim*, had Congress intended to prevent the rights of a creditor with an allowed secured claim over a non-primary residence from being modified, it could have added a provision under § 1322(b)(2) that requires a debtor seeking the modification of a creditor's rights, like Mrs. Droznik, to be eligible for discharge. But neither Section 1322(b) nor any other statute in the Bankruptcy Code requires such a debtor to be eligible

for discharge. Like the debtor in *In re Miller*[2], who was allowed to strip off a lean regardless of their discharge eligibility, Mrs. Droznik is similarly situated in that she should be allowed to cram down the value of the vacant lot and pay the full amount as provided by her plan and pursuant to § 1322(b), irrespective of her ability to receive a discharge.

**B. Nature of the Collateral**

The Creditor incorrectly states that the nature of the collateral is irrelevant when Mrs. Droznik, who is ineligible for a discharge, tries to cram down the allowed secured claim of the Creditor on a vacant lot. Lien "strip off", a reorganization tool similar to a cram down, is available to Chapter 13 debtors. The court in *In re Scantling* held that the strip off is accomplished through the 11 U.S.C. § 506(a) valuation procedure that determines whether the creditor holds a secured claim. *Wells Fargo, N.A. v. Scantling (In re Scantling)*, 754 F.3d 1323, 1329 (11th Cir. 2014). Additionally, "[o]nce this determination has been made, pursuant to § 1322(b)(2), the creditor's rights are modified by avoiding the lien to which the creditor would otherwise be entitled under nonbankruptcy law." *Id*. at 1329-30. Furthermore, "[u]nder such analysis, § 1325(a)(5) is not involved, and the debtor's ineligibility for a discharge is irrelevant to a strip off in a Chapter 20 case." *Id*.

Here, as stated in *Johnson,* Mrs. Droznik's *in personam* liability was extinguished in her Chapter 7 discharge, leaving action against her *in rem* only. Therefore, like the debtor's in *In re Blendheim*, Mrs. Droznik, who is only seeking to modify the Creditor's *in rem* rights and not an *in personam* discharge, is allowed to retain the secured property and pay only the present value of

---

[2] The court in *In re Miller* stated that "the strip off of wholly unsecured mortgage debt is permissible under a chapter 13 plan for a debtor who is ineligible to obtain a discharge, and will be effective when payments required pursuant to [Section 1322(b) of the Bankruptcy Code] and otherwise under the plan are completed." *In re Miller,* 462 B.R. 421, 434 (Bankr. E.D.N.Y. 2011).

the collateral to the creditor over the creditor's objection, pursuant to 11 U.S.C. § 1322(b)(2). Because the only remaining action against her is *in rem* and she is not seeking a discharge, her plan can be confirmed by the court where (1) she seeks a cram down to the value of the collateral, which satisfies one of the conditions required in *Sherwood* and *Blendheim,* and (2) she intends to pay off the entire amount of the value of the collateral.

Like the "strip off" in *In re Scantling*, a cram down is accomplished when the 11 U.S.C. § 506(a) valuation procedure that determines whether the creditor holds a secured claim "operates in tandem with § 1322(b)" to cram down a secured claim in Chapter 13 cases. *In re Scantling*, 754 F.3d 1323 at 1329. Consequently, it is the very nature of the property that either allows or disallows the modification provision provided in Section 1322(b)(2). Once this determination has been made, pursuant to 11 U.S.C. § 1322(b)(2), the creditor's rights are modified by cramming down the value of the collateral to which the creditor would otherwise be entitled under nonbankruptcy law. Here, like in *Scantling*, under such analysis, 11 U.S.C. § 1325(a)(5) is not involved, and Mrs. Droznik's ineligibility for a discharge is irrelevant to a cram down in her Chapter 20 case.

**C.  Valuation of the Security**

Lastly, the Creditor incorrectly states that the Debtor's pending Motion to Determine the Value of Security and Creditor's Allowed Secured Claim should be denied because the value of the property is immaterial. The court in *In re Boukatch* held that "[w]hether a creditor who has a security interest in the debtor's property is considered a 'secured' creditor under the Bankruptcy Code depends upon the valuation of the property." *Boukatch v. MidFirst Bank (In re Boukatch)*, 533 B.R. 292, 296 (B.A.P. 9th Cir. 2015) (citing *Zimmer v. P.S.B. Lending Corp. (In re Zimmer)*, 313 F.3d 1220, 1223 (9th Cir. 2002) (citing § 506(a)). "A claim is not a 'secured claim' to the extent that it exceeds the value of the property that secures it." *Id*. Furthermore, "[i]f, after applying

§ 506(a), the creditor's claim is determined to be 'secured,' which includes partially secured claims…, the creditor is still the holder of a secured claim' and the debtor is unable to… [modify] the undersecured claim to the principle residence's fair market value." *Id*. (citations omitted).

Here, the valuation of the property is not immaterial and Mrs. Droznik's property is distinguishable from the property in *Boukatch*. First, the Creditor and Debtor agree that the Creditor has at least a partially secured claim. For that status to be determined, there must be a valuation of the property as explained in *Boukatch*. *Id*. If there were to be no such valuation, neither party could determine the status of the Creditor's claim or the amount owed to the Creditor. Therefore, to establish that the property is a secured and allowed claim, a § 506(a) valuation assessment must occur. Second, because it is admitted by the Debtor that the Creditor has at least a partially secured claim, the only way that the Creditor's right could be modified is if the real property were not Mrs. Droznik's primary residence. Here, that is precisely the case and Mrs. Droznik's petition to cram down comports with the § 1322(b)(2) requirements explained in *Boukatch*. Unlike the debtor's property in *Boukatch*, the real property in question in this case is not Mrs. Droznik's primary residence. Therefore, because valuation is essential for determining the status of the Creditor's claim and because that valuation does not affect Mrs. Droznik's right to modify such claim under § 1322(b)(2), the Debtor's Motion to Determine the Value of the Security and Creditor's Allowed Secured Claim should not be denied.

**<u>CONCLUSION</u>**

In conclusion, because Mrs. Droznik is not required to be discharge eligible in order to receive confirmation of her Chapter 13 plan or to modify the rights of the Creditor, the Creditor's Motion to Deny Confirmation and Dismiss the Case should be denied.

**Dated:** June 14, 2016
White Plains, New York

/s/Linda M. Tirelli
Linda M. Tirelli, Esq.
Garvey Tirelli & Cushner Ltd.
50 Main Street, Suite 390
White Plains, New York 10606
Tel: (914) 946-2200